IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOSEPH P. GUTIERREZ,

    Petitioner,

  v.

A.P. KANE, Warden,

    Respondent.
                                   /

No. C 05-1537 SI

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Joseph P. Gutierrez, a California prisoner, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a decision by the Board of Prison Terms ("BPT") denying him parole. For the reasons set forth below, the Court hereby DENIES the petition.

**BACKGROUND**

Petitioner was convicted of two counts of kidnapping for robbery, and was found to have used a firearm in the commission of the offense. The facts of the commitment offense are as follows. On November 16, 1983, petitioner entered a beauty salon and robbed the occupants of $84.00.[1] He threatened the victims, "If you don't give me your money, the woman is dead." Ans. Ex. 2 at 8. Petitioner stated that his co-defendant told him that the beauty salon owner owed the co-defendant money, and that his original intent had been to collect the money owed; however, once he arrived at the salon he believed that the owner did not have the money, and he decided to rob the salon patrons. *Id*.

---

[1] Petitioner states that he stole $94.00, but the BPT states that the record shows Gutierrez stole $84.00.

at 8-11.

That evening, petitioner and a co-defendant approached two individuals who were seated in their vehicle in the parking lot of a restaurant. *Id*. at 8, 48-49. Petitioner forced entry into the rear seat of the vehicle, and the other man forced entry into the driver's seat. *Id*. Petitioner put a gun to the back of one the occupants, and may have put a gun to the head of the other occupant. *Id*. They drove the vehicle around the parking lot, robbed the victims, and eventually let them go unharmed. *Id*.

On January 16, 1985, petitioner was sentenced to "life, plus nine years" in prison. *Id*. at 2. Petitioner is currently incarcerated at the Correctional Training Facility in Soledad, California, and he had his fifth parole suitability hearing in September 2003. At that time, petitioner was 58 years old. *Id*. at 53. Petitioner and his attorney spoke at the hearing, as did a district attorney who opposed parole. The panel reviewed and relied on the documents in petitioner's central file containing information about the commitment offense, petitioner's past criminal history, and his behavior in prison.

The panel determined that petitioner was not suitable for parole, and stated:

> This Panel has reviewed all information received from the public and relied on the following circumstances in concluding that the prisoner is not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison at this time. . . . [T]he paramount reasoning would be the timing and the gravity of the committing offense. The offense was carried out – the offense was carried out in a vicious, brutal manner. There were multiple victims attacked and injured in separate incidents. This was wherein the prisoner entered a beauty salon and robbed the occupants of approximately 84 dollars, which is what the record says, however, the prisoner says 94 dollars in currency. And obviously made some threats wherein the – were made by the prisoner, I'm going to – I'm not kidding, as well as, if you – if you don't give me your money, the woman is dead. The prisoner doesn't remember making those statements, it's been such a long time, however, that's what the record says. Later on that evening, at approximately 10:00, the prisoner and his codefendant again approached two victims who had been (indiscernible) in the parking lot. A handgun was produced and the victims, they were kidnapped and – from that parking lot and eventually let go unharmed. The offense was carried out in a manner, which demonstrates exceptional insensitive disregard for human sufferings. The motive of the crime was inexplicable or very trivial in relationship to the offense, as this was about greed. . . .

*Id*. at 56-57. The panel also noted that petitioner had "an escalating pattern of criminal conduct and violence":

> He failed to profit from society's previous attempts to correct his criminality. Such attempts included a prior prison term, county jail time – or not that, a prior prison term

2

> and parole, excuse me. As well as, he failed previous grants of parole and probation and cannot be counted upon to avoid such criminality. He had an unstable social history and prior criminality which includes, starting in 1975, possession of marijuana and he received a fine, shoplifting, a fine, and then in December, '78, unlawful possession of explosives. He received a 10 year prison term, he was out in the three, and then there was also 40 months for defrauding the government, and as well as in March, the offense.

*Id*. at 58. The panel stated that petitioner "still needs some self-help in order to face, discuss, understand, and cope with stress in a nondestructive manner, to understand the causative [sic] of what caused the prisoner to take this upon himself, to gain money quickly through illicit means." *Id*.

The panel also noted several favorable factors in petitioner's file. The panel stated that petitioner was "performing adequately" in the institution, and that "the psychosocial report was adequate." *Id*. The panel stated that petitioner "should be commended" because he had been disciplinary-free since 1993, had founded and participated in a veterans' group, was involved in NA/AA since 1995, had several vocations, worked as a teacher's aide, and had received excellent evaluations. *Id*. at 59. However, the panel concluded that the positive aspects of petitioner's behavior did not outweigh the factors of unsuitability. *Id*.

After the BPT denied parole, petitioner sought a writ of habeas corpus in the state courts. Sitting *en banc*, the California Supreme Court denied the petition without comment. *See* Pet. Ex. C.

**DISCUSSION**

Petitioner challenges the BPT's denial of parole as a denial of his due process rights.[2] California prisoners have a cognizable liberty interest in release on parole. *See McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002).[3] A parole board's decision satisfies the requirements of due process if the decision is supported by "some evidence" having "some indicia of reliability." *Id*. at 904; *see also Powell v. Gomez*, 33 F.3d 39 (9th Cir. 1994).

---

[2] Petitioner also contends that he has suffered an ex post facto violation. This Court has already considered and rejected that claim as meritless on its face. *See* May 19, 2005 Order at 2.

[3] For the reasons stated in the Court's January 18, 2006 order, the Court rejects respondent's contention that petitioner does not have any federal due process rights in connection with parole proceedings.

3

1    Here, the BPT listed the nature of the commitment offense as the primary reason it denied
2 parole. The California regulations governing parole state that a circumstance which indicates
3 unsuitability for parole is if "the prisoner committed the offense in an especially heinous, atrocious or
4 cruel manner." 15 Cal. Code Regs. § 2281(c)(1). The regulations further provide that in making this
5 determination,

> The factors to be considered include: (A) Multiple victims were attacked, injured or killed in the same or separate incidents. (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder. (C) The victim was abused, defiled or mutilated during or after the offense. (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering. (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

*Id*. at § 2281(c)(1)(A)-(E).

In describing the nature of the offense, the BPT panel decision states that "[t]here were multiple victims attacked and injured in separate incidents," "the offense was carried out in a vicious, brutal manner," and "[t]he motive of the crime was inexplicable or very trivial in relationship to the offense, as this was about greed" Ans. Ex. 2 at 56-57. Although there is no evidence to support a finding that multiple victims, or any victims, were physically injured,[4] there is at least some evidence to support a finding that Gutierrez attacked multiple victims both at the beauty salon and in the robbery in the parking lot. The regulation is phrased in the disjunctive ("attacked, injured *or* killed"), 15 Cal. Code Regs. § 2281(c)(1)(A) (emphasis added).

In addition, the BPT's finding that "the offense was carried out in a vicious, brutal manner" is supported by some evidence both because of Gutierrez's threat in the beauty parlor ("If you don't give me your money, the woman is dead"), and because he held a firearm to the head or back of at least one of the parking lot robbery victims. Ans. Ex. 2 at 8, 49-50. Finally, the BPT's statement that "[t]he motive of the crime was inexplicable or very trivial in relationship to the offense, as this was about

---

[4] In fact, the sentencing judge stated that Gutierrez had made efforts to insure that no victims were injured, and that he appeared to have concern "at least for the welfare of these people." Pet. Ex. B at 185.

4

greed" is also supported by some evidence. Petitioner admitted during the parole hearing that his motive for the robbery was to obtain money. *Id*. at 8-11, 47-50. He contends however, that he did not want the money out of greed, but rather because he needed money in order to leave town to escape "the mafia." *Id*. at 9, 49-50. Gutierrez further argues that the BPT failed to take into account the significant stress that he was under when he engaged in the commitment offense.[5] However, the BPT was not required to believe Gutierrez's explanation of his motivation.

Petitioner is correct that the Ninth Circuit has cautioned that the seriousness of the commitment offense fades over time as a predictor of suitability. *See Biggs v. Terhune*, 334 F.3d 910, 917 (9th Cir. 2003) ("A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."). However, whether the "some evidence" standard "is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [decision-maker]." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455-56 (1985). Moreover, the Supreme Court has indicated that the judiciary should be mindful of the subjective and predictive nature of a parole panel's decision:

> No ideal, error-free way to make parole-release decisions has been developed; the whole question has been and will continue to be the subject of experimentation involving analysis of psychological factors combined with fact evaluation guided by the practical experience of decision makers in predicting future behavior. Our system of federalism encourages this state experimentation.

*Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 13 (1979).[6] Thus, while in the first instance the Court may very well have reached a different parole decision than the BPT, it is not the

---

[5] The regulations state that a factor which tends to show suitability is if "[t]he prisoner committed his crime as the result of significant stress in his life." 15 Cal. Code Regs. § 2281(d)(4).

[6] Because the Court finds that the BPT's primary reason for denying parole was supported by "some evidence," the Court does not evaluate the BPT's other reasons for denying parole. The Court notes, however, that at least some of these reasons, such as petitioner's purported unstable social history and his need for more self-help, do not appear to be supported by the record. Further, because the Court finds that the BPT's decision was supported by some evidence, the Court does not address petitioner's assertion that the BPT routinely denies parole.

5

province of the Court to make such determinations.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES the petition for writ of habeas corpus. (Docket No. 1).

**IT IS SO ORDERED.**

Dated: March 29, 2007

SUSAN ILLSTON
United States District Judge

7